IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA



SEP 2 7 2010

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

DONALD JACK WEBB, )
)
Plaintiff, )
)
v. ) No. CIV 09-073-RAW-SPS
)
JANE STANDIFIRD, et al., )
)
Defendants. )

## OPINION AND ORDER

This action is before the court on the defendants' motion for summary judgment. The court has before it for consideration plaintiff's complaint, the defendants' motion, and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff did not filed a response to the motion.

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at John Lilley Correctional Center (JLCC) in Boley, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at that facility. The defendants are Jane Standifird, JLCC Acting Warden; Phillip Langston, JLCC Health Service Administrator; Dr. Wit Chainakul, JLCC Physician; Anita Thomas, R.N., JLCC Head Nurse; Officer Duckworth, JLCC Correctional Officer; Officer Newport, JLCC Yard Guard; Alice Turner, JLCC Warden's

Assistant; Kelly Bratford, JLCC Nurse; and JLCC Security Chief Young.[1]

Plaintiff alleges in Count I of his complaint that the defendants have been deliberately indifferent to his serious medical needs by refusing to provide medications and other treatments for his colon cancer. He claims he arrived at JLCC in February 2008, and on or about May 1, 2008, he submitted a sick call for his symptoms. Defendant Dr. Wit Chainakul examined him and made an appointment for a colonoscopy at the Lindsay Hospital. On July 22, 2008, plaintiff saw Dr. Nemiary in Lindsay and was held overnight for a CT Scan. Dr. Nemiary advised plaintiff that he had colon cancer and needed "priority surgery" by the following week. Plaintiff was returned to JLCC where Dr. Chainakul denied his request for hemorrhoid medication.

Plaintiff claims he was not taken for surgery as advised by Dr. Nemiary, and he was told by Officer Duckworth that the facility was too short on staff to transport him. On August 6, 2008, Defendant Langston responded to plaintiff's Request to Staff by advising him that the surgery would be scheduled, and plaintiff would be notified of the date of surgery. Plaintiff alleges his numerous Requests to Staff were not answered.

One evening the nurse was summoned, because plaintiff was bleeding severely. Dr. Chainakul advised, however, that this symptom was normal. On August 8, 2008, plaintiff wrote a letter asking why DOC was trying to kill him, and sent it to state elected officials,

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

DOC medical and legal staff, and the Oklahoma Attorney General's office. On August 12, 2008, he was taken to the University of Oklahoma Medical Center and Presbyterian Hospital for initial tests. The colon cancer diagnosis was confirmed, and he was treated with radiation and chemotherapy for seven weeks, but he allegedly was denied medication prescribed by his treating physician for pain and malaise. He claims Defendant Anita Thomas told him he was being denied medication, because DOC already had spent too much money on him. Plaintiff, therefore, was forced to obtain the medication by contacting the OU Medical Center physician by mail.

On December 11, 2008, plaintiff had the recommended surgery. Dr. Chainakul allegedly refused to give plaintiff medication for his post-surgical pain, saying that "pain good for you, body will heal itself." The OU Medical staff had to call Dr. Chainakul and insist plaintiff be given the pain medication that had been ordered. Plaintiff was given morphine for pain, but he was denied Benadryl to prevent an allergic reaction to the morphine. He also had to provide the necessary wipes for sanitation himself at a cost of $80.00, because the JLCC medical staff said there were no more supplies.

In Count II plaintiff complains the defendants conspired to cause him to make unscheduled and unnecessary trips to the OU Medical Center for treatment, contributing to his physical pain and suffering and his emotional distress. He claims Defendant Officer Duckworth took him to the OU Medical Center and back to JLCC nearly ten times for nonexistent appointments. He allegedly was shackled for the almost three-hour trip, and he was denied pain medication during the transportation. The OU Medical Center personnel said the orders to transport plaintiff did not originate with OU. Plaintiff contends the unnecessary trips were painful and unnecessary, and Officer Duckworth drove on rough back

3

roads as a means of retaliation against plaintiff. On one of the trips for a nonexistent appointment, Defendant Duckworth left plaintiff in the vehicle while Duckworth went into a casino for an extended time. In addition, on one occasion the JLCC medical staff called plaintiff to the medical unit, causing him to walk 300-400 yards painfully, only to deny him medical care and send him back to his unit.

Plaintiff alleges again in Count III that Defendant Duckworth left him unattended, shackled, and without medical care in the transport van, while Duckworth went inside a casino for an extended period of time. He claims in Count IV that the defendants' delays and denial of medical treatment have turned his 20-year sentence into a death sentence, and the defendants conspired to retaliate and harass him and to cause him acute emotional distress. He complains in Count V that Defendant Turner opened his incoming and outgoing legal mail and used the privileged information to his detriment, denying him his rights of self-expression and due process. In Count VI he asserts the defendants' willful waste of state and federal funds through delay and denial of his medical care was intentional and without regard to his condition.

The defendants have filed a motion for summary judgment, alleging plaintiff has failed to exhaust his administrative remedies for the claims in his complaint. Having moved for summary judgment in their favor, the defendants are required to show the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c). Their initial burden is to show the absence of evidence to support plaintiff's case. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The defendants must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which establish the absence of any genuine issue of material fact. *Id*. The defendants need not negate

4

plaintiff's claim or disprove plaintiff's evidence, but rather, the defendants' burden is to show there is no evidence in the record to support plaintiff's claim. *Id.* at 325.

> [T]he burden on the nonmovant to respond arises only if the summary judgment motion is properly supported as required by Rule 56(c). Accordingly, summary judgment is appropriate under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). If the evidence produced in support of the summary judgment motion does not meet this burden, summary judgment must be denied *even if no opposing evidentiary matter is presented.* If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to summary judgment as a matter of law. If it has not, summary judgment is not appropriate, for no defense to an insufficient showing is required.

*Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002) (citations and quotations omitted) (emphasis in original).

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may

plaintiff's claim or disprove plaintiff's evidence, but rather, the defendants' burden is to show there is no evidence in the record to support plaintiff's claim. *Id.* at 325.

> [T]he burden on the nonmovant to respond arises only if the summary judgment motion is properly supported as required by Rule 56(c). Accordingly, summary judgment is appropriate under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). If the evidence produced in support of the summary judgment motion does not meet this burden, summary judgment must be denied *even if no opposing evidentiary matter is presented.* If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to summary judgment as a matter of law. If it has not, summary judgment is not appropriate, for no defense to an insufficient showing is required.

*Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002) (citations and quotations omitted) (emphasis in original).

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may

submit a Request to Staff (RTS). If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

According to the special report, plaintiff never filed a medical grievance or a grievance concerning the alleged opening of his legal mail. Debbie L. Morton, Manager of DOC Administrative Review Unit, states by affidavit that she reviewed plaintiff's records and found he had not filed any proper grievance appeals with her office. In addition, Mike Murray, DOC Nurse Manager of Medical Services, states by affidavit that plaintiff had not filed any medical grievances since July 1, 2008. Plaintiff did not file a response to the defendants' motion, but he stated in his request for extension of time to file a response that he did not have time to follow the grievance procedures, because of the urgency and severity of his medical condition [Docket #41]. The court, therefore, finds there are no genuine issues of material fact concerning whether plaintiff has exhausted his administrative remedies.

**ACCORDINGLY,** the defendants' motion for summary judgment [Docket #37] is GRANTED, and this action is, in all respects, DISMISSED for plaintiff's failure to exhaust his administrative remedies, pursuant to 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED** this 21st day of September 2010.

RONALD A. WHITE
UNITED STATES DISTRICT JUDGE